## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **00-06047**

STEVEN MEARS,

    Plaintiff,

vs.

CONSECO LIFE INSURANCE COMPANY
f/k/a MASSACHUSETTS GENERAL
LIFE INSURANCE COMPANY,

    Defendant.

_____\

**CIV-HURLEY**

**MAGISTRATE JUDGE**
**LYNCH**

NIGHT BOX

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

### I. NOTICE OF REMOVAL

Defendant, CONSECO LIFE INSURANCE COMPANY, f/k/a MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY, ("CONSECO"), files this Notice of Removal of this action to the United States District Court for the Southern District of Florida and states:

### II. STATE COURT ACTION

1.    This action was commenced on or about December 9, 1999 when a Complaint was filed by Plaintiff in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.  The Complaint was then served on Defendant through the Florida Department of Insurance on December 10, 1999.  No further proceedings have occurred in this action, and the Notice of Service of Process, Summons and Complaint are the only pleadings and papers served in this action.  Certified copies of the Notice of Service of Process, Summons, and Complaint are attached as Exhibit "1."

2.    This suit is a civil action in which Plaintiff alleges that he is the beneficiary of



a life insurance contract previously issued by CONSECO to his late wife, CRYSTAL MEARS. Complaint ¶ 4. Plaintiff asserts that on or about July 15, 1996, CONSECO issued a life insurance policy insuring the life of CRYSTAL MEARS with a death benefit of $90,000.00. Complaint ¶ 4.

3.     Plaintiff alleges that subsequent to the issuance of the policy, CRYSTAL MEARS died and the benefits under the policy became due and payable. Plaintiff attached a copy of the insurance contract as Exhibit "A" to the Complaint.

4.     Lastly, Plaintiff claims that CONSECO has "refused to pay the benefits due and instead attempted to rescind the policy." Complaint ¶ 6.

### III.  FEDERAL DIVERSITY JURISDICTION

5.     This Court has original jurisdiction of this action under the provisions of 28 U.S.C. § 1332 and it is one that may be removed to this Court by CONSECO pursuant to the provisions of 28 U.S.C. § 1441, in that it is a civil action wherein the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is both at the time of filing of the Complaint and the time of removal, between citizens of different states. Removal is effectuated pursuant to the provisions of 28 U.S.C. § 1441, and is timely under the provisions of 28 U.S.C. § 1446(b) in that less than thirty (30) days have elapsed since CONSECO first received the Complaint by service or otherwise.

### A.   DIVERSITY OF CITIZENSHIP

6.     Plaintiff, STEVEN MEARS, the beneficiary to the life insurance contract, at all times material to the Complaint, was a resident of Broward County, Florida. Plaintiff, STEVEN

MEARS, is a citizen of the **State of Florida** and was a citizen both when the complaint was filed and at the time of removal. Complaint ¶ 2. CONSECO is a corporation organized and existing pursuant to the laws of the **State of Indiana**, with its principal place of business in the **State of Indiana**, and is therefore deemed to be a citizen of the **State of Indiana** pursuant to 28 U.S.C. § 1332(c)(1).

7.     The style of the Complaint specifically alleges that CONSECO is "a foreign corporation." Moreover, Plaintiff alleges that CONSECO was a foreign corporation licensed to do and doing business in Broward County, Florida.

**B.     AMOUNT IN CONTROVERSY**

8.     The amount in controversy exceeds $75,000.00, exclusive of interests and costs, because Plaintiff seeks relief for the alleged failure by CONSECO to pay benefits allegedly due and owing on the subject life insurance contract which has face value of $90,000.00.

9.     Thus, the face value of the policy constitutes the jurisdictional amount. <u>See Guardian Life Ins. Co. of America v. Muniz</u>, 101 F.3d 93 (11th Cir. 1996); <u>In re The Prudential Ins. Co. of America Sales Practices Litigation</u>, 962 F. Supp. 450, 502-03 (D.N.J. 1997). Accordingly, the amount in controversy is $90,000.00.

10.     Moreover, this Court can determine the amount in controversy for jurisdictional purposes by reference to the Notice of Removal. <u>Wright v. Continental Casualty Co.</u>, 456 F.Supp. 1075 1077 (M.D. Fla. 1978).

11.     Additionally, Plaintiff seeks an award of attorney's fees. Complaint ¶ 7. Some courts in this Circuit have held that when attorney's fees are allowed by statute, such as under

Fla. Stat. § 627.428, they may be included in assessing the amount in controversy.[1] E.g., Hall v. Travelers Ins. Co., 691 F.Supp. 1406, 1408-10 (N.D. Ga. 1988); see also Springstead v. Crawfordville State Bank, 231 U.S. 541 (1913)(attorneys' fee provided for in promissory note considered in determining jurisdictional amount; holding such fee was clearly not part of costs or interest and "the moment suit was brought the liability to pay a fee became a 'matter in controversy,' and must be computed in making up the requisite jurisdictional amount").

## IV.  FEDERAL REMOVAL PROCEDURAL REQUIREMENTS

12.    This Notice of Removal from State court is being filed within thirty (30) days of receipt by Defendant, CONSECO LIFE INSURANCE COMPANY, of the initial pleading in this action and thus timely filed pursuant to 28 U.S.C. § 1446.

13.    Written notice of the filing of this notice has been furnished to Plaintiff.

14.    A copy of this Notice has been filed with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

15.    Attached is a copy of all process, pleadings, and documents served on Defendant, CONSECO LIFE INSURANCE COMPANY in this action.

---

[1] In so stating, CONSECO does not concede that Plaintiff is entitled to an award of attorney's fees.

Mears v. Conseco Life Insurance Company
Page 5

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

U.S. Mail to: MICHAEL C. MATTSON, ESQUIRE, Counsel for Plaintiff, Cooney, Mattson,

Lance, Blackburn, Richards & O'Connor, P.A., 2312 Wilton Drive, P.O. Box 14546, Ft.

Lauderdale, Florida 33302 this 10th day of January, 2000.

Luks, Koleos & Santaniello, P.A.
SunTrust Centre, Suite 1050
515 E. Las Olas Boulevard
Fort Lauderdale, Florida 33301
(954) 761-9900

By:_____
Daniel J. Koleos
Florida Bar No. 516325
Alan S. Rosenberg
Florida Bar No. 981400

E:\DOCS\MEARS.CON\REMOVAL.MOT

99-0298 MCM:jws

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.       99020629

STEVEN MEARS,

      Plaintiff,

**04**

vs.

CONSECO LIFE INSURANCE COMPANY,
f/k/a MASSACHUSETTS GENERAL
LIFE INSURANCE COMPANY,

      Defendant.

_____

## COMPLAINT

Plaintiff, STEVEN MEARS, files this complaint against defendant CONSECO

LIFE INSURANCE COMPANY, f/k/a MASSACHUSETTS LIFE INSURANCE

COMPANY ("CONSECO") and states:

1. This is an action for damages in excess of $15,000, exclusive of interest and

costs.

2. At all times material to the complaint, plaintiff STEVEN MEARS was a

resident of Broward County, Florida.

3. At all times material to the complaint, CONSECO was a foreign corporation

licensed to do and doing business in Broward County, FL.

LAW OFFICES

COONEY, MATTSON, LANCE, BLACKBURN, RICHARDS & O'CONNOR, P.A.

P.O. BOX 14546, FORT LAUDERDALE, FLORIDA 33302 · TEL. 954/568-6669

Case Number: 99-12235 (12)

4. On July 15, 1996, CONSECO issued a life insurance policy in favor of Crystal Mears in Broward County, FL. Plaintiff STEVEN MEARS was listed as the beneficiary of that contract, a copy of which is attached to this complaint as Exhibit A.

5. Subsequently, Crystal Mears died and the benefits under the policy became due and payable.

6. Although STEVEN MEARS has made a demand under the policy, CONSECO has refused to pay the benefits due and instead attempted to rescind the policy.

7. These actions constitute a breach of the life insurance contract, and plaintiff STEVEN MEARS has been forced to retain counsel in an effort to recover the benefits payable under the policy.

WHEREFORE plaintiff STEVEN MEARS demands the benefits payable pursuant to the life insurance policy issued by CONSECO, attorney's fees, costs, and all other damages payable pursuant to law.



COONEY, MATTSON, LANCE,
BLACKBURN, RICHARDS &
O'CONNOR, P.A.
Attorney for the Plaintiff
2312 Wilton Drive
P.O. Box 14546
Ft. Lauderdale, FL 33302
(954) 568-6669

BY _____
MICHAEL C. MATTSON, ESQ.
Florida Bar No. 308242

LAW OFFICES
COONEY, MATTSON, LANCE, BLACKBURN, RICHARDS & O'CONNOR, P.A.
P.O. BOX 14546, FORT LAUDERDALE, FLORIDA 33302 · TEL. (954) 568-6669

# MASSACHUSETTS GENERAL LIFE

### INSURANCE COMPANY
### BOSTON, MASSACHUSETTS

**A STOCK COMPANY/HEREINAFTER CALLED THE COMPANY**

Administrative Offices: 7887 E. Belleview Avenue/ Englewood, CO 80111
(800) 525-7662

This policy is a legal contract between the Company and the owner.

### READ YOUR POLICY CAREFULLY.

The Company will pay the proceeds as defined herein to the owner on the maturity date if the insured is living on that date. Upon receipt by the Company at its Administrative Offices of due proof that the insured died before the maturity date and while this policy was in force, the Company will immediately pay the proceeds to the beneficiary.

All payments are subject to all of the provisions of this and the following pages of this policy signed at its Administrative Offices, Englewood, Colorado. This policy is issued in consideration of the application and payment of the initial premium.

### NOTICE OF 20 DAY RIGHT TO EXAMINE THE POLICY

**Please review this policy and the attached application. If dissatisfied for any reason this policy will be canceled by delivering or mailing the policy to Massachusetts General Life Insurance Company, 7887 East Belleview Avenue, Englewood, Colorado 80111, or to the insurance agent through whom it was effected before midnight of the twentieth day after receipt of such policy by the applicant. Upon such delivery or mailing, the policy shall be void from the beginning. Return of the policy or contract by mail is effective on being postmarked, properly addressed and postage prepaid. The Company must return all payments made for this policy within ten days after it receives the returned policy.**

*Robert P. H. Epperson*

Secretary

*Roger E Dunker*

President

SEP 08 1997

CLAIMS

### FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

**ADJUSTABLE DEATH BENEFIT. PROCEEDS PAYABLE UPON DEATH OF INSURED PRIOR TO THE MATURITY DATE. FLEXIBLE PREMIUMS PAYABLE DURING THE LIFETIME OF THE INSURED UNTIL THE MATURITY DATE. NONPARTICIPATING. NO DIVIDENDS APPLICABLE.**

EXHIBIT

BRUNF-94

## ALPHABETICAL GUIDE

| | |
|---|---|
| Accumulation Account | 9 |
| Age | 14 |
| Amount and Frequency | 6–7 |
| Annual Report | 15 |
| Assignment | 6, 12 |
| Basis of Computation | 10 |
| Beneficiary | 6 |
| Cash Value | 9 |
| Cash Surrender Value | 9 |
| Change in Death Benefit Option | 8 |
| Change in Specified Amount | 8 |
| Continuation of Insurance | 10 |
| Cost of Insurance | 9 |
| Cost of Insurance Rates | 9 |
| Date of Issue | 3 |
| Death of Beneficiary | 6 |
| Debt | 10 |
| Effective Date of Coverage | 15 |
| Elections, Designations, Changes and Requests | 14 |
| Entire Contract | 14 |
| Error in Age or Sex | 14 |
| Expense Charges | 5 |
| Grace Period | 7 |
| Incontestability | 14 |
| Initial Premium | 6 |
| Initial Specified Amount | 3 |
| Loan Interest | 11 |
| Loan Value | 10 |
| Maturity Date | 15 |
| Minimum Annual Premium | 6 |
| Monthly Deduction | 9 |
| Nonparticipating | 14 |
| Owner | 6 |
| Owner and Beneficiary Change | 6 |
| Partial Withdrawals | 10 |
| Payment of Proceeds | 14 |
| Planned Periodic Premium | 6 |
| Policy Cost Factors | 15 |
| Policy Date | 3, 15 |
| Policy Loan | 10 |
| Premium Class | 14 |
| Proceeds | 14 |
| Projection of Benefits and Values | 15 |
| Qualifying Annual Premium | 6 |
| Reinstatement | 7 |
| Repayment | 11 |
| Rider Cost of Insurance Schedule | 3 |
| Simultaneous Death | 6 |
| Suicide Exclusion | 14 |
| Surrender | 9 |
| Surrender Charge | 9 |
| Table of Minimum Death Benefits | 5 |
| Table of Guaranteed Maximum Monthly Cost of Insurance Rates per $1,000 | 4 |
| Table of Surrender Charges | 5 |
| Termination | 15 |
| Termination of Policy | 11 |
| Unscheduled Premiums | 7 |
| Where Payable | 6 |

## POLICY PROVISIONS

| | |
|---|---|
| Death Benefit | 7 |
| General | 14–15 |
| Interest Credits | 10 |
| Loan | 10 |
| Nonforfeiture | 9–10 |
| Ownership, Beneficiary and Assignment | 6 |
| Policy Change | 8 |
| Premium Payments, Grace Period and Reinstatement | 6–7 |
| Settlement Options | 11 |

## OPTIONAL BENEFITS

If you have purchased any optional benefits, they will be listed in the Rider Cost of Insurance Schedule section of a Policy Data Page and the benefit will be inserted in the contract.

BRUNF–94

## POLICY DATA PAGE

| | | |
|---|---|---|
| INSURED    CRYSTAL L MEARS | 1090305893 | POLICY NUMBER |
| AGE   29   FEMALE | AUGUST 2, 1996 | DATE OF ISSUE |
| PLAN   FLEX. PREM. ADJ. LIFE | $90,000 | INITIAL SPECIFIED AMOUNT |
| PREMIUM CLASS   SELECT NON SMOKER | $206.55 | PLANNED PERIODIC PREMIUM |
| DEATH BENEFIT OPTION   A | $206.55 | INITIAL PREMIUM |
| MATURITY DATE   JULY 15, 2067 | $291.24 | MINIMUM ANNUAL PREMIUM |
| POLICY DATE     JULY 15, 1996 | $826.20 | QUALIFYING ANNUAL PREMIUM |
| | QUARTERLY | PREMIUM FREQUENCY |

### MONTHLY COST OF INSURANCE SCHEDULE

| FORM NUMBER | BENEFIT DESCRIPTION | INITIAL SPECIFIED AMOUNT | MONTHLY COST OF INSURANCE | FIRST MONTHLY DEDUCTION | LAST MONTHLY DEDUCTION |
|---|---|---|---|---|---|
| BRUNF-94 | FLEX. PREM. ADJ. LIFE | $90,000 | SEE PAGE 4 | 07/15/96 | 06/15/67 |

POLICY DATA PAGE
(CONTINUED)

TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES
PER $1000

| ATTAINED AGE | POLICY YEAR | RATE | ATTAINED AGE | POLICY YEAR | RATE |
|---|---|---|---|---|---|
| 29 | 1 | 0.0925 | 65 | 37 | 1.2845 |
| 30 | 2 | 0.0951 | 66 | 38 | 1.4061 |
| 31 | 3 | 0.0982 | 67 | 39 | 1.5237 |
| 32 | 4 | 0.1017 | 68 | 40 | 1.6507 |
| 33 | 5 | 0.1059 | 69 | 41 | 1.7884 |
| 34 | 6 | 0.1341 | 70 | 42 | 1.9558 |
| 35 | 7 | 0.1423 | 71 | 43 | 2.1580 |
| 36 | 8 | 0.1519 | 72 | 44 | 2.4109 |
| 37 | 9 | 0.1628 | 73 | 45 | 2.7139 |
| 38 | 10 | 0.1779 | 74 | 46 | 3.0632 |
| 39 | 11 | 0.1930 | 75 | 47 | 3.4575 |
| 40 | 12 | 0.2110 | 76 | 48 | 3.8846 |
| 41 | 13 | 0.2304 | 77 | 49 | 4.3438 |
| 42 | 14 | 0.2500 | 78 | 50 | 4.8411 |
| 43 | 15 | 0.2670 | 79 | 51 | 5.3971 |
| 44 | 16 | 0.2870 | 80 | 52 | 6.0366 |
| 45 | 17 | 0.3071 | 81 | 53 | 6.7749 |
| 46 | 18 | 0.3274 | 82 | 54 | 7.6370 |
| 47 | 19 | 0.3494 | 83 | 55 | 8.6208 |
| 48 | 20 | 0.3730 | 84 | 56 | 9.7216 |
| 49 | 21 | 0.4012 | 85 | 57 | 10.9306 |
| 50 | 22 | 0.4288 | 86 | 58 | 12.2389 |
| 51 | 23 | 0.4600 | 87 | 59 | 13.6543 |
| 52 | 24 | 0.4965 | 88 | 60 | 15.1838 |
| 53 | 25 | 0.5323 | 89 | 61 | 16.8317 |
| 54 | 26 | 0.5730 | 90 | 62 | 18.6490 |
| 55 | 27 | 0.6130 | 91 | 63 | 20.6664 |
| 56 | 28 | 0.6540 | 92 | 64 | 22.9970 |
| 57 | 29 | 0.6914 | 93 | 65 | 25.7925 |
| 58 | 30 | 0.7283 | 94 | 66 | 29.5778 |
| 59 | 31 | 0.7706 | 95 | 67 | 35.3585 |
| 60 | 32 | 0.8216 | 96 | 68 | 45.5264 |
| 61 | 33 | 0.8832 | 97 | 69 | 66.4471 |
| 62 | 34 | 0.9621 | 98 | 70 | 83.3333 |
| 63 | 35 | 1.0593 | 99 | 71 | 83.3333 |
| 64 | 36 | 1.1681 | | | |

THE COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMISSIONERS 1980 STANDARD ORDINARY FEMALE MORTALITY TABLE, AGE LAST BIRTHDAY. ACTUAL MONTHLY COST OF INSURANCE RATES WILL BE DETERMINED BY THE COMPANY BASED ON THE POLICY COST FACTORS DESCRIBED ON PAGE 15. HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

BASED UPON THE MINIMUM GUARANTEED INTEREST RATES AND MAXIMUM COST OF INSURANCE, THIS POLICY WILL REMAIN IN FORCE UNTIL SEPTEMBER 15, 2050 PROVIDED: (1) THE PLANNED PERIODIC PREMIUM IS PAID EACH TIME WHEN DUE; AND (2) NO CHANGES ARE MADE IN THE POLICY.

SEP 08 1997

CLAIMS

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY

POLICY DATA PAGE
(CONTINUED)

## TABLE OF MINIMUM DEATH BENEFITS

| ATTAINED AGE | PERCENT OF ACCUMULATION ACCOUNT | ATTAINED AGE | PERCENT OF ACCUMULATION ACCOUNT |
|---|---|---|---|
| 0-40 | 250% | 65 | 120% |
| 45 | 215% | 70 | 115% |
| 50 | 185% | 75 | 105% |
| 55 | 150% | 90 | 105% |
| 60 | 130% | 95 AND OVER | 100% |

FOR AGES NOT SHOWN, THE APPLICABLE PERCENTAGE WILL BE DETERMINED BY
REDUCING PROPORTIONATELY BETWEEN THE AGES THAT ARE SHOWN.

## EXPENSE CHARGES

THERE IS A CHARGE OF $3.00 PER MONTH PER POLICY WHICH IS GUARANTEED FOR
THE FIRST FIVE POLICY YEARS. THIS CHARGE MAY BE INCREASED BY THE COMPANY
ON A POLICY ANNIVERSARY AFTER THE POLICY HAS BEEN IN FORCE FOR AT LEAST
FIVE YEARS, BUT NOT TO EXCEED $5.00 PER MONTH PER POLICY AND ONLY
UPON THE GIVING OF 90-DAY NOTICE OF AN INCREASE TO THE OWNER.
THERE IS AN EXPENSE CHARGE OF $0.07 PER MONTH FOR EACH $1,000 OF INITIAL
SPECIFIED AMOUNT IN ALL POLICY YEARS.

THERE ARE THE FOLLOWING PERCENTAGES OF PREMIUM EXPENSE CHARGES:

    (1)    DURING THE FIRST POLICY YEAR ONLY, THE APPLICABLE PERCENTAGE IS
        80.0% OF THE PREMIUMS PAID TO THE COMPANY UP TO THE QUALIFYING
        ANNUAL PREMIUM AND 0.0% OF ANY PREMIUMS PAID IN EXCESS OF THE
        QUALIFYING ANNUAL PREMIUM.

    (2)    DURING EACH SUBSEQUENT POLICY YEAR, THE APPLICABLE PERCENTAGE IS
        0.0% OF ALL PREMIUMS PAID TO THE COMPANY.

## TABLE OF SURRENDER CHARGES

| BEGINNING YEAR | SURRENDER CHARGE | BEGINNING YEAR | SURRENDER CHARGE |
|---|---|---|---|
| 1 | $  495.72* | 6 | $  495.72 |
| 2 | 495.72 | 7 | 495.72 |
| 3 | 495.72 | 8 | 495.72 |
| 4 | 495.72 | 9 | 495.72 |
| 5 | 495.72 | 10 AND OVER | NONE |

EACH PARTIAL WITHDRAWAL IS SUBJECT TO A $25.00 TRANSACTION CHARGE. IN
ADDITION, A PRO RATA SURRENDER CHARGE WILL BE IMPOSED ON PARTIAL
WITHDRAWALS IF THE EFFECT OF SUCH PARTIAL WITHDRAWAL IS TO REDUCE THE
SPECIFIED AMOUNT. THE AMOUNT OF THE PRO RATA SURRENDER CHARGE WILL BE
BASED UPON THE PERCENTAGE OF REDUCTION IN THE SPECIFIED AMOUNT.

NOTE:    AT SOME FUTURE TIME, THE POLICY CASH VALUE LESS DEBT MAY NOT
        COVER THE NEXT MONTHLY DEDUCTION. IN SUCH A SITUATION, THE
        POLICY WILL ENTER THE GRACE PERIOD AND WILL TERMINATE AT THE END
        OF THAT PERIOD IF SUFFICIENT PREMIUM TO COVER THE MONTHLY
        DEDUCTION IS NOT PAID. SEE MINIMUM ANNUAL PREMIUM PROVISION.

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY

OWNER  BENEFICIARY AND ASSIGNMENT  PROVISIONS

## OWNER

The owner means the owner set out in the application unless subsequently changed. During the insured's lifetime, the owner has the right to receive every benefit, exercise every right and enjoy every privilege granted by this policy. If the owner of this policy is a trust, proof of the existence of the trust must be furnished to the Company.

## BENEFICIARY

The beneficiary named in the application will receive the proceeds upon death of the insured unless the beneficiary has been changed by the owner.

If more than one person is named as beneficiary, the proceeds will be paid in equal shares to the surviving beneficiaries, unless otherwise provided.

If the beneficiary is "children," this means children born to or legally adopted by the insured.

## DEATH OF BENEFICIARY

If any beneficiary dies before the insured, that beneficiary's interest will pass to any surviving beneficiaries or contingent beneficiaries according to their respective interest.

If no beneficiary or contingent beneficiary survives the insured, the proceeds will be paid to the owner or the owner's estate.

## OWNER AND BENEFICIARY CHANGE

The owner may change the owner and the beneficiary at any time during the lifetime of the insured unless otherwise provided in a previous designation. Any change must be in written form satisfactory to the Company.

The change will take effect on the date the request was signed, but it will not apply to any payments made by the Company before the request was received and recorded by the Company.

## SIMULTANEOUS DEATH

If any beneficiary dies within 15 days after the insured, the proceeds will be paid as if the beneficiary died before such insured. However, this provision will not apply to any payment the Company makes before receiving and recording notice of the beneficiary's death.

## ASSIGNMENT

This policy may be assigned. No assignment will be recognized by the Company unless: (i) the original instrument or a certified copy is filed with the Company at its Administrative Offices; and (ii) the Company sends the owner an acknowledged copy. The Company will not be responsible for the validity of any assignment.

The claim of any assignee is subordinate to that of the Company, including any debt to the Company.

The rights of the beneficiary and owner are subject to the rights of the assignee.

## PREMIUM PAYMENTS, GRACE PERIOD AND REINSTATEMENT PROVISIONS

## INITIAL PREMIUM

The initial premium is the premium due on the policy date. The initial premium cannot be less than one twelfth of the minimum annual premium.

## PLANNED PERIODIC PREMIUM

The planned periodic premium is the premium shown on a Policy Data Page.

## QUALIFYING ANNUAL PREMIUM

The qualifying annual premium for this policy is shown on a Policy Data Page.

## MINIMUM ANNUAL PREMIUM

This policy will not lapse during the first three policy years, if on each monthly anniversary date during this period (i) is greater than or equal to (ii), where: (i) is the sum of all premiums paid to date minus any policy loans and minus any partial withdrawals; and, (ii) is one twelvth (1/12) of the minimum annual premium shown on a Policy Data Page, multiplied by the number of months elapsed since the policy date of this policy, including the month following the monthly anniversary date.

## WHERE PAYABLE

The first premium is payable in advance to the Company at its Administrative Offices or through an authorized representative of the Company. After the first premium, all premiums are to be paid to the Company at its Administrative Offices. Receipts will be furnished on request.

## AMOUNT AND FREQUENCY

The owner may change the amount of planned periodic premium. The Company reserves the right to limit the amount of any increase.

BRUNF-94

The frequency of premium payment shown on a Policy Data Page will serve only as an indication of the owner's preference as to probable future frequency of payment. The owner may change the frequency of planned periodic premium payment at any time.

A check or draft given for all or any part of a premium, unless paid upon its presentation to the bank or person drawn on, shall not be considered as payment.

## UNSCHEDULED PREMIUMS
Additional premiums, but not less than $25.00, may be paid at any time before the maturity date. The Company reserves the right to limit the number and amount of additional premium payments.

Section 7702 of the Internal Revenue Code limits the amount of premiums payable under this policy for the death benefit to qualify for exclusion from gross income. If a premium in excess of that premium limitation is received, it will be refunded to the owner.

When a change is made under the Policy Change provision, the premium limitation will be adjusted.

## GRACE PERIOD
If the cash surrender value on a monthly anniversary day will not cover the next monthly deduction, a grace period of 61 days from such monthly anniversary day will be allowed to pay a premium that will cover the monthly deduction. The Company will send a written notice 30 days before the end of the grace period to the owner's last address shown in the Company's records and to any assignee of record if the premium is not previously paid. The cash surrender value and the monthly deductions are described in the Nonforfeiture provision. If the insured dies during the grace period, any past due monthly deductions will be deducted from the proceeds. The policy will remain in force during the grace period, unless surrendered.

See Minimum Annual Premium section for the method of avoiding lapsation of the policy during the first three years.

## REINSTATEMENT
Subject to meeting the following conditions, the policy may be reinstated within five years after the effective date of lapse and before the maturity date, unless it was surrendered for cash. The requirements for reinstatement are:

1. Evidence of insurability satisfactory to the Company must be submitted;

2. Premium sufficient to pay any past due monthly deductions at the end of the grace period must be paid;

3. Minimum premium sufficient to keep the policy in force for two months at time of reinstatement must be paid; and

4. Any debt existing at the end of the grace period must be paid or reinstated at the policy loan interest rate.

Monthly deductions will not be due for the period of time between the end of the grace period and the date of reinstatement.

The effective date of reinstatement will be the date the application for reinstatement is approved by the Company.

Upon reinstatement, surrender charges, if any, will then be reinstated in the amount shown on a Policy Data Page for the policy year of lapse. Such surrender charges will be the same as if the policy had not lapsed.

The Incontestability section will apply if the policy has been in force for less than two years. If the policy has been in force for two years during the lifetime of the insured, it will be contestable only as to statements made in the reinstatement application; and, only for a period of two years from the effective date of reinstatement.

If the policy has been in force for two years during the lifetime of the insured, the suicide exclusion will not apply.

## DEATH BENEFIT PROVISION

This policy will provide one of the following death benefits in determining the proceeds of the policy:

1. Option A. The death benefit will be the greater of:

a. The specified amount on the date of death, or

b. The accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

BRUNF–94

7

2. Option B. The death benefit will be the greater of:

a. The accumulation account on the date of death, plus the specified amount on the date of death, or

b. The accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

The death benefit option in effect on the date of issue is shown on a Policy Data Page.

## POLICY CHANGE PROVISIONS

### CHANGE IN SPECIFIED AMOUNT

At any time after the first policy year, upon written request, the specified amount may be changed, subject to the following conditions:

1. Specified Amount Decreases

a. Any decrease will be effective on the monthly anniversary day on or next following receipt of the request by the Company. A supplemental Policy Data Page which reflects the decrease will be furnished. A decrease will be applied in the following order:

1) First, against any increase in the specified amount (beginning with the most recent) and, then;

2) Against the initial specified amount.

b. The specified amount remaining in force after any requested decrease may not be less than $5,000.

c. A pro rata surrender charge will be deducted from the accumulation account. Such pro rata charge will be calculated by: determining what percent of the initial specified amount is represented by the decrease; then applying that percentage to the original surrender charge as the pro rata surrender charge. Future surrender charges will be reduced by the same percentage as determined for each such decrease.

d. The cash surrender value following the decrease must be greater than zero.

e. If a decrease in the specified amount is made in the second or third policy year, the minimum annual premium will not be reduced.

2. Specified Amount Increases

a. Any increase approved by the Company will be effective on the date shown on a supplemental Policy Data Page.

b. A supplemental application must be submitted.

c. Evidence of insurability satisfactory to the Company must be submitted.

d. The first month's cost of insurance must be paid.

### CHANGE IN DEATH BENEFIT OPTION

If the death benefit option is Option B, it may be changed to Option A. The new specified amount will be the death benefit as of the effective date of change. If the death benefit Option is A, it may be changed to Option B. The new specified amount will be the death benefit less the value of the accumulation account as of the effective date of change.

The effective date of change will be the monthly anniversary day on or next following the date the Company receives the request for change.

The death benefit option may not be changed if:

1. Such change will result in a specified amount below $5,000; or,

2. After such change the policy would not qualify as a life insurance policy as defined at the date of change by Federal law or regulation.

No change may be made during the first policy year.

## NONFORFEITURE PROVISION

### ACCUMULATION ACCOUNT
The accumulation account on the policy date will be the initial net premium. The accumulation account on any other monthly anniversary day will be calculated as (a) plus (b) plus (c) minus (d) minus (e) minus (f) where:

a. Accumulation account on the preceding monthly anniversary day;

b. One month's interest on item (a);

c. Net premiums paid since the preceding monthly anniversary day plus interest;

d. Partial withdrawals made since the preceding monthly anniversary day plus interest from the date of withdrawal;

e. Monthly deduction for the month preceding the monthly anniversary day;

f. One month's interest on item (e).

On a day other than a monthly anniversary day, the accumulation account will be calculated as (a) plus (c) minus (d) minus (e) using the above definitions.

Net premium is the premium paid less the percentage of premium expense charge shown on a Policy Data Page.

### MONTHLY DEDUCTION
The monthly deduction for a policy month will be calculated as (a) plus (b) where:

a. Cost of insurance plus the cost of additional benefits provided by rider for the policy month; and

b. Monthly expense charges as shown on a Policy Data Page.

### COST OF INSURANCE
The monthly cost of insurance for the policy is calculated as (a) multiplied by the result of (b) minus (c) where:

a. Monthly cost of insurance rate as described in the Cost of Insurance Rates section;
b. Insured's death benefit at the beginning of the policy month divided by (i) 1.0028709 (during the first 20 policy years) or (ii) 1.0016516 (during the 21st and subsequent policy years);
c. Accumulation account at the beginning of the policy month.

Divide the result by $1,000.

The monthly cost of insurance for any rider is shown in the Cost of Insurance Schedule section of a Policy Data Page.

### COST OF INSURANCE RATES
The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue. Attained age means age on the prior policy anniversary. These rates are shown on a Policy Data Page.

Current monthly cost of insurance rates will be determined by the Company based on the policy cost factors described on Page 15. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates.

The monthly cost of insurance rate for any rider is shown or referred to in the Cost of Insurance Schedule section of a Policy Data Page.

### CASH VALUE
The cash value of this policy is:

1. Value of the accumulation account; less

2. Surrender charge.

### CASH SURRENDER VALUE
The cash surrender value of this policy is:

1. Cash value; less

2. Any debt.

### SURRENDER CHARGE
The surrender charge, which is shown on a Policy Data Page, is a charge against the accumulation account for surrender of the policy. It is not applicable to the surrender of a rider attached to the policy.

### SURRENDER
The owner may surrender this policy for its cash surrender value at any time before the policy terminates.

The Company may defer payment for not more than six months following receipt by the Company of the surrender request unless the surrender is to be applied to pay premiums on policies with the Company.

If a surrender is requested within 30 days after a policy anniversary, the cash surrender value will not be less than the cash surrender value on that anniversary, less any policy loans and partial withdrawals made on or after such anniversary.

BRUNF–94

9

## PARTIAL WITHDRAWALS

Partial withdrawals may be made from the accumulation account after this policy has been in force for one year. No more than one partial withdrawal may be made in any policy year. The minimum partial withdrawal which may be made is five hundred dollars. The amount which may be withdrawn may not exceed the cash surrender value. The specified amount will be reduced by the amount of the withdrawal if death benefit Option A is in effect.

If death benefit Option A is in effect, a pro rata surrender charge will be imposed against the accumulation account. The amount of this charge will be based upon the percentage of reduction in the specified amount, calculated by: determining what percent of the initial specified amount is represented by the partial withdrawal, then applying that percentage to the original surrender charge as the pro rata surrender charge. Future surrender charges will be reduced by the same percentage as determined for each such decrease. A $25.00 administrative charge will also be imposed.

Subject to evidence of insurability satisfactory to the Company, the specified amount will not be reduced by the amount of a partial withdrawal. In such a case, a charge of only twenty-five ($25.00) will be imposed against the accumulation account.

If death benefit Option B is in effect, no pro rata surrender charge will be imposed; however, there will be a $25.00 administrative charge.

## CONTINUATION OF INSURANCE

If you stop paying premiums or you pay insufficient premiums so that the cash surrender value is not sufficient to cover the next monthly deduction, the insurance on all insureds will continue, subject to the Grace Period provision, until the earlier of: 1) Monthly anniversary day on which the cash surrender value will not cover the monthly deduction for the following month; or 2) Maturity date.

## BASIS OF COMPUTATION

Minimum cash values are based on the Commissioners 1980 Standard Ordinary Mortality Table, Age Last Birthday, maximum expense and surrender charges and interest at 3.5% per year during the first twenty policy years and 2.0% per year thereafter.

The nonforfeiture values for this policy are equal to or greater than those required by law. The nonforfeiture values are calculated in accordance with the Standard Nonforfeiture Law. A detailed statement of the method of computing values has been filed with the insurance supervisory official of the state in which the application for this policy was signed.

## INTEREST CREDITS PROVISION

The interest rate to be credited monthly to the unborrowed portion of the accumulation account, during each calendar quarter, or portion thereof, shall be equal to the greater of (i) or (ii) where: (i) seventy-five (75%) of the interest rate payable on the third business day immediately preceding each January 1, April 1, July 1 and October 1, by the Chemical Bank, New York, New York, or its successor(s) on three (3) month time certificates of deposit; and (ii) the monthly rate equivalent to an effective annual rate of 3.5% during the first twenty policy years and 2.0% per year thereafter.

Interest in excess of the above rate may be credited to the accumulation account at the option of the Company.

Should the Chemical Bank or its successor(s) cease issuing three (3) month time certificates of deposit, the Company reserves the right to substitute the three month certificate of deposit interest rate of another national banking institution of the Company's choice. Such substitution shall be subject to approval by the insurance regulatory authority of the state of residence of the owner, if required.

That portion of the accumulation account equal to an outstanding policy loan balance will earn interest at the rate of 3.5% per year during the first twenty policy years and 2.0% per year thereafter.

## LOAN PROVISION

## POLICY LOAN

The owner may obtain a loan at any time while this policy is in force and on the sole security thereof.

## LOAN VALUE

The loan value may not exceed the cash surrender value of the policy.

The Company may defer making a loan for not more than six months after application for the loan is made unless the loan is to pay premiums on policies with the Company.

## DEBT

Debt means all existing loans on this policy plus earned interest which has either accrued or been added.

## LOAN INTEREST

Loan interest will accrue from the date of each loan to the next policy anniversary date. Loan interest is payable in arrears at the end of each policy year. If interest is not paid when due, the amount of the interest will be added to the loan and bear interest on the same terms as the loan. The amount which may be borrowed is that amount which, with interest to the next policy anniversary, will equal the cash surrender value as of the next policy anniversary. Except as provided below, a loan secured by this policy will bear interest at the rate of 6% per year during the first twenty policy years and 4.5% thereafter.

After this policy has been in continuous force for a specified period, the owner will be eligible for a loan at a reduced rate of 3.5% per year until the end of the twentieth policy year and 2.0% per year thereafter. The specified period is:

a. Ten years if the insured's issue age is 55 or less;
b. Policy anniversary following the insured's 65th birthday if the insured's issue age is between 55 and 60; and
c. Five years if the insured's issue age is 60 or over.

This reduced loan interest rate is available subject to the following conditions:

1. The maximum amount which may be loaned during any one policy year at this reduced interest rate may not exceed the greater of:

a. 15% of the policy's cash surrender value at the end of the prior policy year; or

b. 15% of the cash surrender value on the policy anniversary immediately prior to the first loan exercised under this provision.

This amount may be loaned at this reduced rate in future policy years until there is no more cash surrender value.

2. Amounts loaned in excess of the amounts permitted under 1 above during any one policy year will bear interest at an interest rate of 6% per year during the first twenty policy years and 4.5% per year thereafter.

## REPAYMENT

A loan may be repaid at any time while this policy is in force. A loan that exists at the end of the grace period may not be repaid unless this policy is reinstated.

## TERMINATION OF POLICY

At any time the total debt equals or exceeds the cash value, the policy will terminate without value.

At least 31 days before the date the policy terminates, the Company will send a notice of its intention to terminate the policy. Notice will be mailed to the last known addresses of the owner and to any assignee of record.

## SETTLEMENT OPTIONS PROVISION

### ELECTION OF OPTIONS

Any amount payable at the death of the insured or any other termination of this policy will be paid in one sum unless otherwise provided. All or part of this sum may be applied to any settlement option.

Payment under a combination of options, or payment to joint or successive payees, or payment to a beneficiary that is not a natural person may be elected only with the consent of the Company.

Any election must be made in writing to the Company. The Company may require the policy for endorsement.

### Election by Owner

During the lifetime of the insured, the owner may elect to have the proceeds paid under one of the payment options below.

### Election by Beneficiary

At the time proceeds are payable to the beneficiary, the beneficiary may elect one of the payment options if proceeds are available to the beneficiary in a lump

sum. The beneficiary has 12 months after payment becomes due to elect one of the following options.

### PAYMENTS

Payments will be made monthly unless otherwise elected.

The Company has the right to change the frequency of payments in order to make a periodic payment of at least $25.00.

The option date under Options 1, 2 and 3 is the date the proceeds are payable, or the date of election, whichever is later. Interest under Option 4 will accrue from such date.

Under Option 3, proof of the age of the payee will be required at the time the first payment is due. The Company reserves the right to require proof that the payee is alive at the time of each payment.

BRUNF-94

## CHANGE IN PAYMENTS

Partial withdrawal under Options 1 and 2 may not be made. All payments under Options 1 and 2 may be paid in one sum only with the consent of the Company. The value of any one sum payment will be the sum of any remaining guaranteed payments discounted at the interest rate used to calculate such payment.

Payments under Option 3 will be commuted only in event of death of the payee. Any payments that remain to be paid under Option 3 at the death of the payee will be paid in one sum. The value of the one sum payment will be the sum of the remaining guaranteed payments, discounted at the interest rate used to calculate such payment.

## WITHDRAWAL

The minimum proceeds that may be applied under Option 4 is $1,000. The minimum proceeds that may remain after a withdrawal under Option 4 is $1,000. The minimum amount that may be withdrawn is $1,000. Proceeds less than this amount will be paid in a lump sum to the payee.

The Company may postpone payment of any amount to be withdrawn for not more than six months from the date the written request for withdrawal is received in the Company's Administrative Offices.

## ASSIGNMENT

The proceeds payable under one of these options may not be assigned.

## CLAIMS OF CREDITORS

To the extent permitted by law, proceeds will not be subject to any claims of a payee's creditors.

## ADDITIONAL INTEREST

Additional interest, if any, paid over the guaranteed 2% will be in an amount and by a method determined by the Company.

## OPTION 1. EQUAL PAYMENTS FOR A GUARANTEED PERIOD

Equal monthly payments for the number of years elected, not to exceed 25 years. Payments will begin on the option date.

### Guaranteed Minimum Monthly Payment for each $1,000 of net proceeds

| Period Income Is Payable (Years) | Monthly Income | Period Income Is Payable (Years) | Monthly Income |
|---|---|---|---|
| 1 | $84.09 | 14 | $6.81 |
| 2 | 42.46 | 15 | 6.42 |
| 3 | 28.59 | 16 | 6.07 |
| 4 | 21.65 | 17 | 5.77 |
| 5 | 17.49 | 18 | 5.50 |
| 6 | 14.72 | 19 | 5.26 |
| 7 | 12.74 | 20 | 5.04 |
| 8 | 11.25 | 21 | 4.85 |
| 9 | 10.10 | 22 | 4.67 |
| 10 | 9.18 | 23 | 4.51 |
| 11 | 8.42 | 24 | 4.36 |
| 12 | 7.80 | 25 | 4.22 |
| 13 | 7.26 | | |

## OPTION 2. EQUAL PAYMENTS OF A SPECIFIED AMOUNT

Equal monthly payments of at least $4.22 per month for each $1,000 of proceeds. Payments will begin on the option date and will continue until the proceeds and interest at the rate of 2% compounded annually are exhausted.

## OPTION 3. EQUAL PAYMENTS FOR LIFE

Equal monthly payments for a guaranteed period of 10, 15 or 20 years as elected and for life thereafter as shown in the table on the following page.

BRUNF-94

## OPTION 3
### Amount of each monthly installment per $1,000 net proceeds.

| Age of Payee* Male | Female | 10 Years | 15 Years | 20 Years | Age of Payee* Male | Female | 10 Years | 15 Years | 20 Years |
|---|---|---|---|---|---|---|---|---|---|
| | | Monthly Income for Life with Guaranteed Period of: | | | | | Monthly Income for Life with Guaranteed Period of: | | |
| | 25 | 2.28 | 2.28 | 2.28 | 55 | 60 | 3.81 | 3.75 | 3.65 |
| | 26 | 2.30 | 2.30 | 2.30 | 56 | 61 | 3.90 | 3.83 | 3.72 |
| | 27 | 2.32 | 2.32 | 2.32 | 57 | 62 | 4.00 | 3.91 | 3.79 |
| | 28 | 2.34 | 2.34 | 2.34 | 58 | 63 | 4.10 | 4.00 | 3.86 |
| | 29 | 2.36 | 2.36 | 2.36 | 59 | 64 | 4.21 | 4.09 | 3.93 |
| 25 | 30 | 2.39 | 2.38 | 2.38 | 60 | 65 | 4.32 | 4.19 | 4.00 |
| 26 | 31 | 2.41 | 2.41 | 2.40 | 61 | 66 | 4.44 | 4.29 | 4.08 |
| 27 | 32 | 2.43 | 2.43 | 2.43 | 62 | 67 | 4.56 | 4.39 | 4.15 |
| 28 | 33 | 2.46 | 2.46 | 2.45 | 63 | 68 | 4.69 | 4.50 | 4.23 |
| 29 | 34 | 2.49 | 2.48 | 2.48 | 64 | 69 | 4.83 | 4.60 | 4.30 |
| 30 | 35 | 2.51 | 2.51 | 2.50 | 65 | 70 | 4.98 | 4.71 | 4.37 |
| 31 | 36 | 2.54 | 2.54 | 2.53 | 66 | 71 | 5.13 | 4.83 | 4.44 |
| 32 | 37 | 2.57 | 2.57 | 2.56 | 67 | 72 | 5.29 | 4.94 | 4.51 |
| 33 | 38 | 2.60 | 2.60 | 2.59 | 68 | 73 | 5.45 | 5.05 | 4.57 |
| 34 | 39 | 2.63 | 2.63 | 2.62 | 69 | 74 | 5.62 | 5.16 | 4.63 |
| 35 | 40 | 2.67 | 2.66 | 2.65 | 70 | 75 | 5.80 | 5.27 | 4.69 |
| 36 | 41 | 2.70 | 2.70 | 2.69 | 71 | 76 | 5.98 | 5.38 | 4.74 |
| 37 | 42 | 2.74 | 2.74 | 2.72 | 72 | 77 | 6.16 | 5.49 | 4.79 |
| 38 | 43 | 2.78 | 2.77 | 2.76 | 73 | 78 | 6.35 | 5.59 | 4.83 |
| 39 | 44 | 2.82 | 2.81 | 2.80 | 74 | 79 | 6.54 | 5.69 | 4.87 |
| 40 | 45 | 2.87 | 2.86 | 2.84 | 75 | 80 | 6.73 | 5.78 | 4.90 |
| 41 | 46 | 2.91 | 2.90 | 2.88 | 76 | | 6.92 | 5.87 | 4.93 |
| 42 | 47 | 2.96 | 2.95 | 2.92 | 77 | | 7.12 | 5.95 | 4.95 |
| 43 | 48 | 3.01 | 2.99 | 2.97 | 78 | | 7.30 | 6.02 | 4.98 |
| 44 | 49 | 3.06 | 3.04 | 3.02 | 79 | | 7.49 | 6.08 | 4.99 |
| 45 | 50 | 3.11 | 3.09 | 3.06 | 80 | | 7.67 | 6.14 | 5.01 |
| 46 | 51 | 3.17 | 3.15 | 3.11 | | | | | |
| 47 | 52 | 3.23 | 3.20 | 3.17 | | | | | |
| 48 | 53 | 3.29 | 3.26 | 3.22 | | | | | |
| 49 | 54 | 3.35 | 3.32 | 3.27 | | | | | |
| 50 | 55 | 3.42 | 3.38 | 3.33 | | | | | |
| 51 | 56 | 3.49 | 3.45 | 3.39 | | | | | |
| 52 | 57 | 3.57 | 3.52 | 3.45 | | | | | |
| 53 | 58 | 3.64 | 3.59 | 3.52 | | | | | |
| 54 | 59 | 3.73 | 3.67 | 3.58 | | | | | |

**\*Age on the birthday coinciding with or next preceding the due date of the first installment. Ages not illustrated are available upon request.**

BRUNF−94

## OPTION 4. PROCEEDS LEFT AT INTEREST
The proceeds may be left with the Company for a period of 1 to 25 years. Interest on the proceeds will be paid at the rate of 2% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1) Annually $20.00.
2) Semiannually $9.95.

3) Quarterly $4.96.
4) Monthly $1.65.

The payee may withdraw portions of the proceeds by request in writing to the Company. At the end of the specified period, any remaining proceeds with accrued interest will be paid in one sum.

## GENERAL PROVISIONS

### ENTIRE CONTRACT
This policy, including any attached riders, and the attached copy of the application and any supplemental applications for additional coverage are the entire contract. This policy cannot be changed or any of its provisions waived, including any extension of time to pay premiums, except by the President, Vice President, Secretary or Assistant Secretary.

All statements made in an application are assumed, in the absence of fraud, to be representations and not warranties. No statement will be used to terminate this policy or defend against a claim unless it is contained in the application or a supplemental application.

Any changes, modifications, or waivers must be in writing. No agent has authority to waive a complete answer to any question on the application, pass on insurability, make or alter any contract or waive any of the Company's other rights or requirements.

### INCONTESTABILITY
This policy will be incontestable after it has been in force during the lifetime of the insured for two years from the date of issue except for nonpayment of premiums.

Any requested additional benefit or specified amount issued after the date of issue or a specified amount which is not reduced following a partial withdrawal due to evidence of insurability approved after the date of issue will be incontestable only after such additional benefit has been in force for two years during the lifetime of the insured following the effective date of such additional coverage.

### PROCEEDS
Proceeds means the amount payable on the maturity date, or the surrender of this policy prior to the maturity date, or upon the death of the insured.

The proceeds payable on death will be the death benefit less any debt.

If the policy is surrendered the proceeds will be the cash surrender value. On the maturity date the proceeds will be the cash surrender value.

### PAYMENT OF PROCEEDS
The proceeds are subject first to any debt to the Company and then to the interest of any assignee of record. Payments to satisfy any debt to the Company and any assignee will be paid in one sum.

### PREMIUM CLASS
The insured's premium class is shown on a Policy Data Page.

### AGE
Age means age last birthday.

### ERROR IN AGE OR SEX
If the age or sex of the insured has been misstated, the cash values, accumulation account and death benefit payable will be that which the most recent monthly deduction would have purchased at the correct age and sex. No adjustment will be made in the cash surrender value.

### SUICIDE EXCLUSION
If the insured commits suicide while sane or insane within two years after the date of issue, the amount payable by the Company will be limited to the premiums paid prior to the insured's death less any debt, and less any partial withdrawals.

If the insured commits suicide while sane or insane within two years after the effective date of any requested additional coverage, the amount payable by the Company will be limited to premiums paid prior to the insured's death for such additional coverage less any debt and less any partial withdrawals.

### ELECTIONS, DESIGNATIONS, CHANGES AND REQUESTS
All elections, designations, changes and requests must be in a written form satisfactory to the Company and become effective when received and approved by the Company at its Administrative Offices.

### NONPARTICIPATING
This is a nonparticipating policy. This policy will not share in any of the Company's profits or surplus earnings. The Company will not pay dividends on this policy.

BRUNF-94

14

## MATURITY DATE

The maturity date is shown on a Policy Data Page. It is the date on which insurance coverage will terminate, no more premiums may be paid, and the cash surrender value is paid to the owner. It is possible that coverage will end prior to the maturity date if the premiums paid and interest credited are not sufficient to continue coverage to such date.

## ANNUAL REPORT

At least once a year, the Company will send the owner a report which shows premiums paid, expense charges, interest credited, mortality charges, outstanding loans, current cash value, cash surrender value, and all charges since the last report.

## PROJECTION OF BENEFITS AND VALUES

The Company will provide a projection of future death benefits and the value of the accumulation account at any time upon written request and payment of a service fee. The fee payable will be the one then in effect for this service. The projection will be based on:

1. Assumptions as to specified amounts, type of coverage option and future premium payments as may be specified by the owner; and

2. such other assumptions as are necessary and specified by the Company and/or owner.

## EFFECTIVE DATE OF COVERAGE

The effective date of coverage under this policy is as follows:

1. The date of issue is the effective date for all coverage provided in the original application.

2. The effective date for any addition to coverage will be the monthly anniversary date on or next following the date the application for the addition is approved by the Company.

## TERMINATION

This policy will terminate when any one of the following events occur:

1. The owner requests that coverage terminate;

2. The insured dies;

3. The policy matures;

4. The grace period ends without payment of the required premiums;

5. The total debt equals or exceeds the cash value.

## POLICY DATE

Policy years and policy anniversaries are computed from the policy date.

## POLICY COST FACTORS

Any change in policy cost factors (interest, cost of insurance and expense charges) will be based upon future expectations for such elements as: investment earnings; mortality; persistency and expenses. Any change in such factors will apply uniformly to all members of the same age, sex, duration and premium class.

## MASSACHUSETTS GENERAL LIFE Insurance Company

Boston, Massachusetts

### ADDITIONAL INTEREST CREDITS RIDER

This rider is a part of the Policy to which it is attached. No premium is charged for this rider. The date of this rider is the date of issue of the Policy.

**ADDITIONAL INTEREST CREDITS**
Interest in addition to the currently declared interest rate will be credited to the accumulation account of the policy, in the amounts and at the times stated below, if the conditions stated below are met.

If the policy is in force at the end of the policy years ten (10), fifteen (15), seventeen (17), eighteen (18), nineteen (19), and twenty (20), the owner will qualify for additional annual interest credits.

When the owner qualifies for additional annual interest credits, the Company will recalculate the value of the accumulation account by crediting the additional interest from the date of issue of this policy. Additional interest will be added to the accumulation account at the end of the tenth policy year and at the end of each monthly policy anniversary thereafter while the policy is in force.

The amount of additional interest credits to be applied is as follows:

| End of Year | Additional Annual Interest Percent |
|---|---|
| 10 | .250% |
| 15 | .250% |
| 17 | .125% |
| 18 | .125% |
| 19 | .125% |
| 20 | .125% |

Qualification for additional interest credits under this rider will not be affected if the policy lapses, provided the requirements are met for reinstatement of the policy.

*Robert P. D Esperance*

Secretary

AICR-86

**MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY**
**Boston, Massachusetts**

**ENDORSEMENT**

Anything in the policy to the contrary notwithstanding:

To obtain information or make further inquiries into this policy, you may call us on our toll-free telephone number provided on the policy cover for your convenience. You may also write to the Company at its Administrative Office address shown on the policy cover.

Attached to and made a part of the policy to which it is attached on the Issue Date of the policy.

*Robert P. F Esperance*

SECRETARY

FL-92

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY
7887 E. Belleview, Englewood, CO 80111

*1800 525-7662*
*Shenandoa Acc't Dept    Premium*

Dear Policyowner:

We welcome you to the Massachusetts General Life family of valued customers and look forward to the opportunity to be of service to you. We have issued The flexible premium adjustable (universal) life insurance policy which you have chosen as part of your financial security program.

Key advantages of your universal life insurance policy include:

*    Financial protection for your loved ones − in case of your early death.

*    Flexibility of premium payments − You may stop or start premium payments as you choose as long as there is enough cash value to continue the policy in force.

*    Tax deferred accumulations − Interest accrues in your life insurance policy's Accumulation Account free from taxes under current tax law, unless withdrawals exceed premium payments.

*    Source of emergency funds − Policy Loans are not considered withdrawals under current tax law and therefore can be taken without tax consequences.

*    Tax advantaged retirement income − At retirement you have access to your funds by way of policy loans which, under current tax law, would not be taxable as long as the policy remains in force.

Your policy provides for an expense charge of $3.00 per month which may be raised to no more than $5.00 per month at any time after the fifth policy year. It is the company's intent to raise this expense charge to $5.00 per month beginning in the sixth policy year. This is consistent with the sales illustration that was provided to you by your agent. Please keep a copy of this letter with your policy.

You have made a prudent decision to secure your financial future. Thank you for choosing Massachusetts General Life.

Sincerely,

*Roger E Dunker*

Roger E. Dunker
President

SEP 0 8 1997

CLAIMS

## MASSACHUSETTS GENERAL LIFE Insurance Company

**PART I APPLICATION**
**FOR LIFE INSURANCE TO**

` 1090305893 `

1. Proposed Insured — First Name: **CRYSTAL** Middle **L.** Last **MEARS**

2. Birth Date mo / day / year **8 30 66** Birth Place **FLORIDA**

3. Height **5** Ft. **8** In. Weight **136** Lbs.

4. Social Security Number **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**

5. ☐ Male  ☐ Married  ☐ Widowed  ☐ Separated
   ☒ Female  ☐ Single  ☐ Divorced

6. RESIDENCE:
   Street & No. **1324 SW 31st ST**
   City **FT. LAUDerdale**
   State **Fla**  Zip Code **33315**  Years **10**
   Former Address (if less than five years at current address)

7. OCCUPATION (If Proposed Insured is under 18 complete for Owner)
   Duties ____
   Employer **Housewife**
   Address ____
   Zip ____  Years ____
   Occupations for past 5 years

8a. To whom shall premium notices be mailed?
   Proposed Insured ☒  Owner ☐  Other ____

8b. Where shall premium notices be mailed?  Residence ☒
   Business ☐  Other ____

9. Plan of Insurance **LIFETIME III**  Amount (if applicable) **$ 90,000**

10. Premiums Payable: Planned Premium (Including Riders) **$206⁵⁵**
   ☐ Annually  ☐ Semi-Annually  ☒ Quarterly
   ☐ Special Monthly  ☐ Govt. Allotment

11. Additional Benefit Riders (Proposed Insured)
   ☐ Waiver of Premium (see 13)
   ☐ ADB  ☐ GIO Option ____ units
   ☐ Return of Accumulation Account Rider (Lifetrend Series Only)
   ☐ Other ____

12. Family Supplement Benefits
   ☐ ____ units of the Spouse Rider
   ☐ ____ units of the Family Insurance Rider
   ☐ $ ____ Child Rider
   ☐ Payor Death Rider
   ☐ Payor Death or Disability Rider

13. FLEX. PREMIUM Adjustable Life Only (Universal Life)
   ☐ Option A: Level Death Benefit
   ☐ Opton B: Increasing Death Benefit
   ☐ Waiver of "Cost of Insurance"
   ☐ Spouse Rider $ ____
   ☐ Child Rider $ ____
   ☐ Other ____

Details of "Yes" answers to question #16.

14. If the sum of future premiums paid for proposed policy exceeds the IRS Premium Limitation, the excess premium should be:
   ☐ Applied to a Deferred Annuity Policy
   ☒ Refunded

15. LIFE INSURANCE NOW IN FORCE (if none, write none)

| Company | Amt. of Life Ins. | Amt. of Acc. Death | Year Issued |
|---|---|---|---|
| | **None** | | |

16a. Do you now have any application for life, accident or health insurance or reinstatement of such insurance pending in any company?. . . . . . . . . . . . . . . . . . .  Yes ☐  No ☒

b. Have you ever had insurance declined, postponed, rated or modified?. . . . . . . . .  ☐  ☒

c. Do you intend to make any flights as a pilot, student pilot or crew member?  (If yes, complete Aviation Questionnaire). . . . . . . .  ☐  ☒

d. Have you, or do you intend to engage in any sport or activity such as auto or motorcycle racing, skydiving or scuba diving?. . . . . . . .  ☐  ☒

e. Do you intend to replace or change any life insurance or annuity policy in connection with this application?. . . . . . . . . . . . . . . . . .  ☐  ☒

17. Have you smoked cigarettes in the past twelve months?  ☐  ☒
   If you now smoke, how much per day? ____

18. OWNER:
   ☒ Proposed Insured
   ☐ Other ____  Name ____ Relationship ____
   ☐ Address ____
   ☐ If the Proposed Insured is under age 18, the owner shall be ____

19. BENEFICIARY as to proceeds at death of Insured:
   Name — Relationship
   Primary **STEVEN MEARS  Husband**

   Secondary, if no primary beneficiary is living:
   ☒ Lawful children of the Insured (including any named below)
   ☐ Children born of the marriage of the Insured and primary beneficiary (including any named below)
   ☐ ____

   Beneficiaries as to proceeds at death of any person other than the Insured shall be the Insured, unless otherwise specified.

20. SPECIAL REQUESTS: (Settlement options, policy data, alternatives, APDF, etc.)  ☐ Issue as Special Class (Extended Term Insurance not available)
   **7/15/96  Effective Date**

21. Policy Loan Interest is to be paid in advance ☐, or arrears ☒, fixed ☒ or variable ☐. If options are not selected interest will be fixed and payable in advance.

**PART II APPLICATION**
**FOR LIFE INSURANCE**

## MASSACHUSETTS GENERAL LIFE Insurance Company
## NON MEDICAL AND FAMILY APPLICATION

1. Proposed Insured  *CRYSTAL  L.  Mears*

2. Persons proposed for insurance (include only Proposed Insured's spouse and/or the Proposed Insured's unmarried children, including legally adopted children and stepchildren who have not attained their 21st birthday and are dependent on the Insured or the Payor)

| Name | Relationship to Insured | Date of Birth | Place of Birth | Ht. | Wt. | Insurance in Force or Pending |
|------|------------------------|---------------|----------------|-----|-----|-------------------------------|
|      |                        |               |                |     |     |                               |
|      |                        |               |                |     |     |                               |
|      |                        |               |                |     |     |                               |
|      |                        |               |                |     |     |                               |

3a. Name and Address of Personal Physician

b. Reason and date consulted:

| Declaration of Insurability | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| 5. Does any person named above intend to replace or change a life insurance or annuity policy in connection with this application? | ☐ | ☒ | e. had any diabetes, gall bladder trouble, liver or genitourinary disorder, ulcers or other digestive disturbance? | ☐ | ☒ |
| 6. Has any person named above ever: | | | f. had any heart disease, chest pain, stroke, abnormal blood pressure, hernia, mental trouble, thyroid disturbance or lung trouble? | ☐ | ☒ |
| a. had kidney disease, nephritis, albumin, blood, pus or sugar in the urine? | ☐ | ☒ | | | |
| b. used on a regular basis: heroin, morphine, other narcotics, marijuana, cocaine, barbiturates, amphetamines, or hallucinogenic drugs; or alcohol? | ☐ | ☒ | g. been a patient in or advised to enter a hospital, sanatorium or other institution for observation, rest, diagnosis, treatment or any operation? | ☐ | ☒ |
| c. had any bone or joint disorder or disease, tumor, cancer, nervousness, syphilis, tuberculosis? | ☐ | ☒ | h. had any X-rays, electrocardiograms, blood or other medical tests or surgical operations? | ☐ | ☒ |
| d. had anemia, leukemia or other disease of the blood? | ☐ | ☒ | i. had any known indication of any disease, condition or other physical disorder or defect not mentioned? | ☐ | ☒ |

Details of "Yes" answers. (Identify Question Number and Individual and Circle Applicable Items; Include diagnosis, dates, duration and names and addresses of all attending physicians and medical facilities.)

*None*

I/We hereby represent that to the best of my/our knowledge and belief all statements and answers as written or printed herein are full, complete and true. I/We agree that they shall form part of this application consisting of Parts I and II and become a part of any contract of insurance issued on such application. I/We understand that all statements and answers given herein are material and will be relied upon by the Company as being complete and true in determining whether I/we qualify for the plan of insurance applied for. I/We hereby authorize any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insurance company, the Medical Information Bureau, or other organization, institute or person that has any records or knowledge of the health of any proposed insured, to give to Massachusetts General Life Insurance Company or its Reinsurers any such information. A photographic copy of this authorization shall be as valid as the original.

I/We understand and agree: (1) that if the full first premium accompanies this application, the coverage (not to exceed $350,000) applied for becomes effective according to the terms and conditions of the conditional receipt; (2) that if a signed authorization for third-party payment which is not accompanied by the full first premium is tendered with the application, coverage shall not be effective until the requested effective date entered on the application and receipt by the Company of the full first premium; (3) that if neither the full first premium nor a signed authorization for third party payment is tendered with the application, no insurance shall take effect unless and until a policy has been delivered to and received and accepted by me and the full first premium paid during the lifetime and insurability of proposed insureds.

The Company has the right to accept or reject this application or to offer coverage at a different rate. I further agree that any policy issued based on this application shall constitute a ratification of additions or corrections made by the Company and noted in the space "Home Office Use." Any change in amount, age at issue, classification, plan of insurance or benefits shall be made only with my written consent in those states where such consent is required.

**If the premium for this application is prepaid, I acknowledge possession of the receipt contained herein, and have read the Terms and Conditions of coverage and declare that I understand and agree to those terms and conditions.**

$ *206.55* deposit made with this application signed at *Ft. Lauderdale*     *Fla*     on  *7   14   96*
City                State        Month  Day  Year

*Crystal Mears*

Signature of Spouse if proposed for insurance     Signature of Proposed Insured

Agent Replacement Question: Will this coverage replace another insurance or annuity policy?  _____ Yes  ✓ No

*Harvey Firestein*

Signature of Witness (Licensed Agent must witness where required by law)     Signature of Owner if other than Proposed Insured

*HARVEY FIRESTEIN   112-34-480)*

Florida Agents: Print name and FL ID No.

FORM L-APP-86                                                                revised 03/94

SEP 0 8 1997

CLAIMS

# MASSACHUSETTS GENERAL LIFE
## INSURANCE COMPANY



STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY that the within the foregoing is a true
and correct copy of the original as it appears of record
and file in the office of the Circuit Court Clerk of Broward
County, Florida.
WITNESS my hand and official seal at Fort Lauderdale,
Florida, this the _____ day of _____
_____ Lockwood, Clerk
_____ Deputy Clerk

**FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY**

ADJUSTABLE DEATH BENEFIT.   PROCEEDS PAYABLE UPON DEATH OF INSURED
PRIOR TO THE MATURITY DATE.   FLEXIBLE PREMIUMS PAYABLE DURING THE
LIFETIME OF THE INSURED UNTIL THE MATURITY DATE.
NONPARTICIPATING.   NO DIVIDENDS APPLICABLE.

BRUNF-94



THE TREASURER OF THE STATE OF FLORIDA
DEPARTMENT OF INSURANCE

STEVEN MEARS,

PLAINTIFF(S),

VS.

CONSECO LIFE INSURANCE COMPANY,
f/k/a MASSACHUSETTS GENERAL
LIFE INSURANCE COMPANY,

DEFENDANT(S).

SUMMONS, COMPLAINT, EXHIBIT "A"

CASE #:    99020629 CACE 04
COURT:    CIRCUIT COURT
COUNTY:    BROWARD
DOI-SOP#:    99-32171

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HERBY GIVEN of the acceptance or receipt of Service of Process by the Insurance Commissioner and Treasurer, served or delivered to my office by MAIL
on the 8th day of December, 99, addressed to the Insurance Commissioner (as process agent or agent for the insurer). A copy of said process was mailed by certified mail from this office to:

CONSECO LIFE INSURANCE COMPANY
ROBERT E BURKETT, JR.
11815 NORTH PENNSYLVANIA STREET
CARMEL IN 46032-0000

as resident agent for the named insurer according to my records; or mailed to said addressee as an agent or to said insurer at the request of the plaintiff or plaintiff's attorney on the 10th day of December, 99.

*Bill Nelson*

Bill Nelson

Insurance Commissioner and Treasurer

Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

Distribution: Clerk of Court, Defendant, Plaintiff or Plaintiff's Attorney

Plaintiff's Representative:
MICHAEL C. MATTSON, ESQUIRE
2312 WILTON DRIVE
P.O. BOX 14546
FORT LAUDERDALE FL 33302                    TS

99-0298 MCM/LD/jws

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY,
FLORIDA

CASE NO.   99020629

STEVEN MEARS,

     Plaintiff,

vs.

CONSECO LIFE INSURANCE COMPANY,
f/k/a MASSACHUSETTS GENERAL
LIFE INSURANCE COMPANY,

     Defendant.

_____

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

CONSECO LIFE INSURANCE COMPANY
11815 N. Pennsylvania Street
Carmel, Indiana 46032

By serving:

DEPARTMENT OF INSURANCE
TALLAHASSEE, FLORIDA

EACH DEFENDANT is required to serve written defenses to the Complaint or Petition on Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Plaintiff's attorney, whose address is 2312 Wilton Drive, P.O. Box 14546, Fort Lauderdale, Florida 33302, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED on _____ DEC 0 6 1999 _____, 1999.



ROBERT E. LOCKWOOD
As Clerk of the Court

By _____
As Deputy Clerk



STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true and correct copy of the original as it appears on record and file in the office of the Circuit Court of Broward County, Florida.
WITNESS my hand and Official Seal at Lauderdale, Florida, this the _____
_____
Robert E. Lockwood, Clerk



CACE

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of the Court for the purpose of reporting judicial workload date pursuant to Florida Statute 25.075.

99020629

04

I.    CASE STYLE

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

STEVEN MEARS,

Plaintiff,                              CASE #:
                                        Judge:
vs.

CONSECO LIFE INSURANCE COMPANY,
f/k/a MASSACHUSETTS GENERAL LIFE
INSURANCE COMPANY,

Defendant.

---

II.  TYPE OF CASE  (Place an x in one space only:  If the case fits more than one type case, select the most definitive.)

Domestic Relations          Torts          Other C_____

____Simplified          ____Professional    ___X__Contracts
     dissolution          malpractice

____Dissolution         ____Products         ____Condominium
                             Liability

____Support-IV-D        __Auto Negligence    ____Real Property

 

|                       |                     |           | Mortgage<br>Foreclosure |
|-----------------------|---------------------|-----------|-------------------------|
|                       |                     |           | _____ Eminent           |
| ____ Support-IV-D     | ____ Other Negligence | Domain  |                         |
|                       |                     |           | ____ Other              |
| ____ URESA-IV-D       |                     |           |                         |

____ Domestic Violence

____ Other Domestic Relations

     III.  Is Jury Trial Demanded in Complaint?

         ____ yes

         _X_ no

DATE:  December 1, 1999.

        COONEY,  MATTSON,  LANCE,  BLACKBURN,
RICHARDS & O'CONNOR, P.A.
Attorney for Plaintiff
2312 Wilton Drive
P.O. Box 14546
Ft. Lauderdale, FL  33302
(954) 568-6669
MICHAEL C. MATTSON, ESQ.
Florida Bar No. 308242



44
ev. 12/96

# CIVIL COVER SHEET

## 00-06047

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

NIGHT BOX
FILED

STEVEN MEARS

JAN 4 2000

CLARENCE MADDOX
CLERK USDC/SDFL/FTL

**DEFENDANTS**

# CIV-HURLEY

CONSECO LIFE INSURANCE COMPANY f/k/a
MASSACHUSETTS GENERAL LIFE INSURANCE
COMPANY

**MAGISTRATE JUDGE
LYNCH**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME ADDRESS AND TELEPHONE NUMBER)

Michael C. Mattson, Esq., Cooney,
Mattson, et al., 2312 Wilton Drive,
Ft. Lauderdale, FL 33302 (954) 368-6699

ATTORNEYS (IF KNOWN) Alan S. Rosenberg, Esq.
Luks, Koleos & Santaniello, PA.
515 E. Las Olas Blvd., Ste. 1050
Ft. Lauderdale, FL 33301

CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

| **BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY) | | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF | | |
|---|---|---|---|---|
| | | (For Diversity Cases Only) AND ONE BOX FOR DEFENDANT) | | |

|  |  | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 5 |

| **IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY) | | | | Appeal to District Judge from |
|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Magistrate Judgment |

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans Exc Veterans | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | B☐ 535 Death Penalty | ☐ 791 Empl Ret Inc Security Act | A☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION

(CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

| **VII. REQUESTED IN COMPLAINT:** | CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F R C P 23 | DEMAND $ | CHECK YES only if demanded in complaint JURY DEMAND:  ☒ YES  ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S)** (See instructions)
IF ANY

JUDGE _____    DOCKET NUMBER _____

DATE  1/10/2000

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 518271    AMOUNT 150.00    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

1/11/00